### NEW YORK BIBLE SOC. v. BUDLONG.

(Supreme Court, Special Term, New York County.   February, 1892.)

CHARITABLE INSTITUTIONS—SALARIES OF TRUSTEES AND DIRECTORS.

A corporation for the distribution of Bibles and to raise funds in aid of the American Bible Society, organized under Laws 1848, c. 319, which provides for the incorporation of societies for mutual improvement in religious knowledge, and for other purposes, is not a charitable or benevolent "institution," within Laws 1872, c. 104, forbidding the trustees and directors of charitable and benevolent "institutions" from receiving salaries, as the statutes distinguish between "institutions" and "corporations" for charitable and benevolent purposes.

Action by the New York Bible Society against Morris M. Budlong, who died during its pendency, whereupon it was revived against Julia M. Budlong, as administratrix.

The cause was submitted on the pleadings and on the following agreed facts:

"It is stipulated by and between the attorneys for the respective parties to this action that the same shall be tried upon the admissions contained in the pleadings herein, and upon such of the following agreed facts as may be read in evidence by either party hereto, subject to legal objections as to the materiality thereof:

"(1) The certificate of incorporation of the New York Bible Society states the objects of the society to be as follows: 'The particular business and objects of this society are as follows, viz.: The distribution of the Sacred Scriptures, without note or comment, and in English, those of the commonly received version, in and about the city and harbor of New York, and the raising of funds for this purpose, and in aid of the American Bible Society;' also, 'that the business of the society shall be managed by a board of sixty managers.'

"(2) The sole business and objects pursued by the said society since its incorporation have been those specified in the said certificate. The distribution of books by the plaintiff is effected through agents employed by it for that purpose, the funds expended for the cost thereof being supplied from church collections and other voluntary gifts. The volumes distributed are received by gratuitous grants thereof from the American Bible Society, and are delivered to the recipients thereof without charge. In a very small number of instances, however, where the recipient is able to do so, he is asked to make some payment. Such payment, if made, is entirely voluntary, and is ordinarily less, and never more, than the manufacturing cost of the book. For any such receipts for books supplied, the New York Bible Society is accountable to the American Bible Society, from which the books are received.

"(3) The American Bible Society, referred to above, is a corporation fully incorporated under a special charter, to wit, chapter 68 of the Laws of 1841 of the legislature of the state of New York; and the purposes thereof, as stated in said act, are the publishing and promoting the general circulation of the Holy Scriptures without note or comment. The said corporate purposes of that society are carried on by printing copies of the Sacred Scriptures in different languages, and either causing the same to be circulated gratuitously, or disposing of them to auxiliary societies, without profit upon the cost of manufacture, for the purpose of distribution.

"(4) The defendant's intestate at all times herein mentioned was an attorney and counsellor at law duly admitted to practice and practicing in the courts of this state and in the courts of the United States.

"(5) The defendant's intestate was elected a manager of the plaintiff in the year 1867, and he continued to be a manager thereof until that relation was terminated in May, 1889, as hereinafter set forth; and he was the president thereof from October, 1881, till October, 1883.

"(6) One Sarah Burr died in the city of New York on or about the 1st day of March, 1882, leaving a last will and testament and codicils thereto, (by which she disposed of upwards of two millions of dollars,) containing a great many provisions and containing many bequests, the validity of which was disputed; among others disputed being a gift to the plaintiff herein.

"(7) The defendant's intestate appeared for plaintiff on the probate of the will aforesaid, which was begun in April, 1882, before the surrogate of the city and county of New York, and was opposed by the next of kin of the said testatrix. The grounds of objection to the bequests to plaintiff and the other beneficiaries were filed in the said surrogate's court on or about April, 1882. The said will was admitted to probate by the said surrogate as a will of real and personal property in January, 1884.

"(8) In January, 1883, an action was commenced in this court by the executors of Mary and Margaret Burr properly to divide the estates, and to determine the interest, among other things, of the said Sarah Burr in the said other estates, in which action defendant's intestate appeared as attorney of counsel for plaintiff, and prepared plaintiff's answer in that action, which was verified by Daniel J. Holden, a vice president of the plaintiff; and said intestate attended to and discharged the duties of an attorney of record and counsel for the plaintiff in all the proceedings therein.

"(9) On or about the 31st day of March, 1884, another action was commenced in this court by the executors of the said Sarah Burr for a construction of her will, and for a judicial examination of and decision upon the various objections raised to the bequests therein made; among others, to the objections against the bequest to the plaintiff in this action. The defendant's testator appeared as attorney and counsel for the plaintiff in the said action, prepared the plaintiff's answer therein, noticed the issue for trial, prepared for trial, and tried the cause on behalf of this plaintiff, prepared and submitted a brief on plaintiff's behalf, and did and performed the necessary duties of an attorney of record and counsel for this plaintiff in the action, both at said trial and likewise on the appeals to the general term and to the court of appeals. A decision in favor of the plaintiff in the action, sustaining the legacy to this plaintiff, was made at the special term, when said issues were tried, and the judgment was sustained both at the general term and in the court of appeals. The appeal to the said court of appeals was argued on the 6th day of March, 1889, and the decision announced on the 19th day of March, 1889.

"(10) On or about the 10th day of May, 1889, the said Morris M. Budlong delivered a letter to the secretary of the plaintiff, in which he resigned his membership, and his office as a manager of the plaintiff.

"(11) On or about May 20, 1889, the defendant's intestate sent to the president of the plaintiff a bill for the aforesaid services in said actions of appeals as beginning April 29, 1882, and terminating March 19, 1889, and making a charge of two thousand dollars against the plaintiff for said services, and crediting thereon certain costs received in the foregoing litigation from the executors of the said Burr amounting to $333.52, leaving a balance stated to be due to the defendant's intestate by plaintiff for said services of $1,666.48. It is admitted for the purposes of this action that the charge aforesaid was a reasonable charge for the aforesaid services.

"(12) On or about the 21st day of May, 1889, at a meeting of the board of managers of the plaintiff, which was the next meeting held after the receipt by the secretary of the resignation aforesaid, a resolution was duly passed accepting the said resignation.

"(13) On or about November 1, 1887, the executors of the said Sarah Burr delivered to defendant's intestate certified checks drawn to the order of the plaintiff for the sum of twenty thousand dollars on account of the legacy aforesaid, and this check was immediately after the receipt thereof delivered by the defendant's intestate to the plaintiff.

"(14) All the foregoing services performed by the defendant's intestate were performed with the knowledge and approval of the plaintiff.

"(15) On or about July 3, 1889, the said executors of the said Sarah Burr delivered to the defendant's intestate a check for twenty thousand dollars, drawn to the order of plaintiff or Morris M. Budlong as attorney, being the

same twenty thousand dollars mentioned in the complaint herein. This was without the knowledge or the express acquiescence or permission of the plaintiff or of any of its officers or agents.

"(16) On or about the 8th day of July, 1889, the defendant's intestate sent by mail to the treasurer of the plaintiff his duly-certified check to order of the plaintiff for the sum of $18,333.52, paid to plaintiff, being balance of said $20,000, also mentioned in the complaint, with a receipted duplicate of the bill rendered as aforesaid.

"(17) On or about July 9, 1889, the treasurer of the plaintiff wrote to the defendant's intestate acknowledging the receipt of the check aforesaid, and requesting a check for the balance retained as aforesaid by the defendant's intestate.

"Dated, New York, January, 1892."

Edward C. Perkins, for plaintiff.
Joseph P. Osborne, for defendant.

INGRAHAM, J. The sole question in this case is whether a corporation organized under the act of 1848[1] for the distribution of Bibles and Testaments without note or comment, and to raise funds in aid of the American Bible Society, is a charitable or benevolent "institution," within the provisions of chapter 104 of the Laws of 1872. The act of 1872 is entitled "An act in relation to trustees and directors of charitable and benevolent institutions," and the act prohibits any trustee or director of any charitable or benevolent institution from receiving any salary or emolument from said institution, and prohibits the directors or trustees of any institution organized for charitable or benevolent purposes from voting or allowing any salary or compensation for services either as trustee or director or in any other capacity. The prohibition contained in the act applies not to corporations, but to institutions; and while a corporation may be organized under the act of 1848 for the purpose of establishing an institution for benevolent or charitable purposes, it is not every corporation that is organized under the act that is organized for such purpose. The act of 1848 provides for the incorporation of societies for literary, historical, scientific, or missionary purposes, for the furtherance of religious opinion, and for Sunday school purposes, and for mutual improvement in religious knowledge; and under its provisions the plaintiff was organized as a corporation to distribute the Sacred Scriptures, and for the raising of funds for such purposes and in aid of the American Bible Society. From the very nature of the work it was to do, no "institution" was contemplated, within the ordinary meaning of that word, and, the legislature, by its adoption of the word "institution" instead of "corporation," apparently intended to distinguish between such corporations or societies as established asylums or homes for benevolent or charitable purposes, and which would be entitled to receive the public money, and such corporations as were private in their character, and were organized for literary or religious objects. It is clear that a religious corporation or a library would not come within the provision of the act in question, and this distinction is, I think, recognized by the legislature in other statutes that have been passed, and which have been referred to by

[1] Laws 1848, c. 319.

counsel for the defendant. The provisions of the Revised Statutes regulating charities clearly distinguish between benevolent institutions and corporations formed under the law of 1848 for benevolent, charitable, and other purposes; and I think that the act of 1872 does not apply to corporations organized for the purpose specified in the certificate of incorporation. I think, therefore, the defendant is entitled to judgment. If plaintiff desires to appeal, however, I will direct that all proceedings after the entry of judgment be stayed until the determination of such appeal.